IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGNENE DIVISION

GARY MULHERN,

        Plaintiff,

  vs.

LIFE INSURANCE COMPANY OF NORTH AMERICA, a Pennsylvania corporation, and SIGNA CORPORATION, a Delaware corporation,

        Defendants.

Case No. 6:17-cv-1758-AA
**OPINION AND ORDER**

AIKEN, District Judge:

    Plaintiff Gary Mulhern moves for judgment on the Administrative Record ("AR") before this Court and asserts that, pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), the record establishes that he continued to be disabled when Defendant Life Insurance Company of North America ("LINA") terminated his long-term disability ("LTD") benefits in November 2015. Doc. 29. LINA has also filed for a cross motion judgment on the AR arguing that was not

Page 1 – OPINION AND ORDER

disabled on the date of termination. Doc. 30. For the reasons set forth below, plaintiff's motion is GRANTED and defendant's motion is DENIED.

## BACKGROUND

Plaintiff brings this action under ERISA to challenge the decision of defendant LINA to terminate his LTD benefit payments. LINA terminated plaintiff's LTD benefits in November 2015 and denied his appeal on July 27, 2017. Plaintiff, a Register Nurse who worked as an operating room nurse, argues that he is permanently disabled due to multiple musculoskeletal disorders and chronic pain. He asserts that his pain prevents him from sitting or standing for the lengths of time necessary to hold employment and, if he were to attempt to sit or stand for longer periods, the pain medication necessary to mitigate the resulting pain reduces his cognitive function to a point where he is unable to work.

Defendant LINA asserts that, although plaintiff has legitimate limitations which prevent him from returning to work as an operating room nurse, he is physically able to perform relevant occupations in the Salem area as defined under the LINA Group Policy LK-961827 ("the Policy"). AR 7. Due to its conclusions, LINA argues that it was correct when it decided to terminate plaintiff's benefits in 2015 and it was correct to deny plaintiff's appeal in 2017.

## FINDINGS OF FACT

Plaintiff was born August 11, 1965 and stands at 6'1" with an average post-gastric bypass surgery weight between 260–280 pounds. AR 1383, 1434, 3504. Plaintiff worked as a journeyman electrician from 1991–1998, as a janitor, as a

Page 2 – OPINION AND ORDER

Certified Nursing Assistant ("CNA") from 2000–2002, and finally as an operating room RN from 2002–2009 at Salem Hospital until he was found to be totally disabled by LINA on February 6, 2009. Doc. 29 at 6–7; AR 4130. LINA paid plaintiff short-term disability and LTD benefits until it issued a termination decision on October 23, 2015 and issued plaintiff's final LTD benefit payment the next month. AR 4130–31.

I.  *Medical History Pre-2009 LINA Disability Classification*

1. At the end of 2007, before LINA classified Plaintiff as disabled, Plaintiff could not work due to intractable buttock and leg pain and was diagnosed with "herniated disc, lumbar radiculitis, knee pain, foot-drop, shoulder pain, arthritis, and lower back injury." AR 3490. Plaintiff's records also indicated that he had elevated blood pressure, hypertension, hyperlipidemia, acute low back, and obesity. AR 3490.

2. In January 2008, plaintiff was examined by Dr. Jerry Hubbard, a neurosurgeon, due to "intractable left buttock and leg pain" resulting from a herniated disc. AR 390–91. Dr. Hubbard performed a partial hemilaminectomy and microdissection of the L4-L5 disc in January 2008. AR 3491. After this procedure, Dr. Hubbard noted that, although there was some alleviation in intensity, plaintiff continued to have pain in his left buttock down to his left calf. *Id.*

3. Three months after this procedure, plaintiff began seeing Dr. Robert Zirschky for bilateral knee pain and plaintiff self-reported more severe pain in the left knee than in the right knee. *Id.* at 3491–92.

4. On February 5, 2009, plaintiff was admitted to the Salem Hospital ER for "quite marked back pain" ranging from his low back to his big toe and was worsened

by any movement. AR 3492. His record indicated that he was taking a muscle relaxer and Vicodin prior to the ER visit but that the medications were not improving his condition. AR 3368, 3492.

II.   *2009 Disability Classification–2012 SSA Benefits Decision*

5.   Plaintiff applied for and was approved by LINA for short-term disability benefits. These payments were made from February 5, 2009 through May 21, 2009. AR 4114.

6.   After his trip to the ER on February 5, 2009, Plaintiff returned to Dr. Hubbard. On March 9, 2009, Dr. Hubbard diagnosed plaintiff with a herniated lumbar disc and lumbar radiculitis and restricted plaintiff from returning to work. AR 3493–94. On March 17, 2009, Dr. Hubbard advised that plaintiff remain on off-work status and to begin physical therapy. AR 3493.

7.   On April 25, 2009, Plaintiff submitted a Disability Questionnaire and Activities of Daily Living form. Plaintiff reported that he read and watched TV daily and routinely cooked, cleaned, shopped, did laundry, and did his rehabilitation exercises and pool exercises. AR 502.

8.   On May 15, 2009, plaintiff contacted LINA and notified it that he was scheduled for bariatric surgery in early June, which prompted LINA to switch Plaintiff to LTD benefit payments. AR 3880. The gastric bypass was completed on June 9, 2009 and was deemed a success. AR 488, 495.

9.   On July 9, 2009, Dr. Hubbard cleared Plaintiff to return to work for half-days for two weeks with a progression to fulltime work. AR 3493.

Page 4 – OPINION AND ORDER

10.   Plaintiff continued to work fulltime until August 24, 2009 when he was injured while lifting a patient. *Id.* Plaintiff returned to Dr. Hubbard with back spasms from this injury. *Id.* Dr. Hubbard advised that Plaintiff not return to work until September 21, 2009. *Id.* However, when Plaintiff began to suffer left sacroiliac joint pain that extended into the left thigh, Dr. Hubbard extended Plaintiff's medical leave until November 12, 2009 and advised Plaintiff to re-start physical therapy. *Id.*

11.   A Psychical Residual Functional Capacity Assessment completed by Dr. Casebolt-Baez on April 13, 2010 indicated that plaintiff's self-reported limitations were not consistent with the evidence in his medical record. For instance, Plaintiff indicated that he was unable to sit for more than two hours at a time, but Dr. Casebolt Baez opined that he could sit for up to six hours in an eight-hour work day. AR 2689, 2695.

12.   Plaintiff completed a Disability Questionnaire and Activities of Daily Living form on October 28, 2010 where he indicated that he walked one mile five times a week and regularly went to the gym for water exercises. AR 260, 264. Plaintiff also indicated that he regularly cooked, cleaned, did laundry, shopped, worked in the yard, read, and watched TV. AR 260.

13.   In January 11, 2011, Mulhern underwent a total left knee arthroplasty, which was performed by orthopedic surgeon Dr. Zirschky. AR 3498–99. After the surgery, plaintiff experienced a gradual increase in stiffness and gradual reduction of the range of flexion in his left knee. AR 3499. On July 7, 2011, Dr. Zirschky performed

a knee manipulation under anesthesia and made a postoperative diagnosis of arthrofibrosis. AR 3499.

14. Dr. Zirschky completed a Physical Capacities Evaluation on June 11, 2011 in which he opined that Plaintiff could sit for four hours in an eight-hour day, stand/walk for less than one hour in an eight-hour day, and must alternate sitting and standing at will throughout the day. AR 1830. Plaintiff's abilities allowed occasional lifting and carrying of up to twenty pounds and occasionally reaching above shoulder level. AR 1831. Plaintiff could never climb, balance, stoop, kneel, crouch, or crawl. AR 1831. He required severe restriction of activities involving unprotected heights, moderate restriction of activities involving being around moving machinery, and mild restrictions related to exposure to marked changes in temperature and humidity and to driving automotive equipment. AR 1831. Dr. Zirschky indicated that Plaintiff suffered from Complex Regional Pain Disorder and that the pain was "disabling to the extent that it would prevent [plaintiff] from working full time at a sedentary position." AR 1832. Dr. Zirschky also indicated that the side effects of plaintiff's medications have a "moderate" effect on his attention and ability to concentrate. AR 1833 (moderate "constitutes a significant handicap with [tasks requiring] sustained attention and concentration [and] would eliminate skilled work tasks").

15. On December 19, 2011, plaintiff underwent surgery, performed by Dr. Hegazi, to have a dorsal cord stimulator implanted as a method of pain control. AR 3502. Immediate results indicated a 70% decrease in pain in his left knee. AR 3502.

However, plaintiff needed to return to Dr. Hegazi by February 2012 for reprogramming of the dorsal cord stimulator because plaintiff no longer experienced relief of pain unless the stimulator was turned to a high level. AR 3505. Having the stimulator on high was not an option because it resulted in weakness of his left leg and neuropathy. AR 3505.

II.  *2012 SSA Benefits Approval*

16.  On February 16, 2012, Administrative Law Judge ("ALJ") Leise of the Social Security Administration (SSA) held a hearing for the determination of plaintiff's disability under the Social Security Act. On February 22, 2012, the ALJ opined that plaintiff had the following residual functional capacity:

> [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except sit for 4 hours in an 8 hour day; stand and walk less than 1 hour in an 8 hour day; lift 20 pounds occasionally; occasionally balance, stoop, and crouch; no kneeling or crawling; occasionally reach above the shoulder level bilaterally; avoid work around unprotected heights and dangerous machinery; is able to understand, remember, and carry out simple and detailed, but not complex, tasks or instructions typical of occupations with an SVP of 1 or 2; and would be unable to perform a regular 8 hour work day, 5 days per week on a sustained basis, is warranted.

AR 2290-2291.

17.  The ALJ approved disability benefits for plaintiff with a retroactive payment period beginning at plaintiff's disability onset on February 5, 2009. AR 2296. The ALJ found that plaintiff had osteoarthritis, degenerative joint disease, and chronic pain, aggravated by obesity, which adversely affected plaintiff's ability to perform routine movement and physical activity in the workplace. AR 2290.

III.  *Post-2012 SSA Benefits Approval–2015 LTD Benefits Termination*

Page 7 – OPINION AND ORDER

18.     Plaintiff was evaluated by Dr. Babe, AC on June 17, 2014 when plaintiff had a limp in his gait, was experiencing painful, swollen ankle and knee joints and decreased range of motion in these joints, and pain in his back. AR 3503.

19.     Dr. Zirschky's notes of plaintiff's July 7, 2014 office visit recorded that plaintiff had been "exercising a lot lately" and "on a regular basis" and was suffering pain in his right sternoclavicular joint. AR 771. Dr. Zirschky also noted that [laintiff sat comfortably in his chair and could raise his arms overhead to 180 degrees with discomfort and weakness on the right side. AR 774.

20.     A physical therapy evaluation summary report completed by Margaret Burden, PT on December 4, 2014 documented that

> We reviewed Gary [Mulhern]'s current exercise program that includes elements of resistance training and cardio exercise. He verbalizes an understanding that cardio exercise is elemental in promoting and maintain weight loss. We reviewed use of target HR zones. Gary is getting his HR up above 80% of his maximal HR with use of a heavy punching ba[g] 45-60 minutes 3 times per week. He supplements his cardio exercise with dancing 60 minutes 2X per week. He is getting 150–180 minutes of cardio type exercise per week. Gary is challenged by issues of chronic pain involving both knees. He manages his pain with use of a spinal stimulator.

AR 728.

21.     Plaintiff completed a Disability Questionnaire and Activities of Daily Living form on June 5, 2015. In this form he indicated that he could do all his activities of daily living independently but that he experienced pain when stooping. AR 140. He also indicated that, during an average week, he read, gardened, worked in his yard, shopped, did laundry, acted a caregiver to his developmentally disabled son, and used a computer. AR 140. He also indicated that he could drive ten miles uninterrupted.

AR 141. Plaintiff wrote that he walked three times per week for one to two miles at a time, though he did so "intermittently due to pain" and "not for recreation." He also reported going to the gym a few times per month where he would "shoot baskets in standing position, hit a heavy bag, stretch, lift weights if in reasonable pain zone." AR 141.

22. Plaintiff sought medical attention on July 24, 2015 for a small lump in his calf that radiated discomfort. AR 3505. He also reported numbness in his right leg which was confirmed in the examination. *Id*.

23. A Physical Ability Assessment ("PAA") completed on August 3, 2015, by Dr. Vandenburgh concluded that plaintiff had the following physical capacities: he could *frequently* (between one-third and two-thirds of the day) sit, reach at desk level and below the waist, lift and carry up to twenty pounds, and push/pull up to twenty pounds; he could *occasionally* (up to one-third of the day) stand, walk, reach overhead, balance, climb regular stairs or ladders, stoop, crouch, and use his lower extremities for foot controls; he could *never* lift or carry more than twenty-one pounds, kneel, or crawl. AR 1416–17.

24. On October 20, 2015, LINA had Rehabilitation Specialist Randy Norris complete a Transferable Skills Analysis ("TSA") of plaintiff. Dr. Norris determined that plaintiff had the capacity to work as a Cardiac Monitor Technician or as an Inside-Meter Tester. AR 1394. These jobs were deemed acceptable because their labor requirements were within the limitations set out in the PAA completed by Dr. Vandenburgh on August 3, 2015. AR 1393, 1416–17.

25. On October 23, 2015, LINA sent Plaintiff a letter indicating that Plaintiff's LTD benefits would be terminated with a last payment to be made on November 22, 2015. AR 3993. The termination was based on Dr. Vandenburgh's August 3, 2015 PAA and the October 20, 2015 TSA completed by LINA which determined that Plaintiff no longer met the Policy's definition of disabled. AR 3995.

IV.   *2015 LTD Benefits Termination–2017 Appeal Denial*

26. Two weeks after the termination decision, a PAA dated November 11, 2015 completed by Dr. Vandenburgh concluded that plaintiff had the following physical capacities: he could *occasionally* (up to one-third of the day) sit, stand, walk, reach overhead, at desk level, and below the waist, lift no more than twenty pounds, carry no more than ten pounds, push/pull no more than twenty pounds, balance, and climb regular stairs or ladders; he could *never* lift more than twenty-one pounds, carry more than eleven pounds, stoop, kneel, crouch, crawl, or use lower extremities for foot controls. AR 1414–15. Dr. Vandenburgh also noted that siting or standing for too long will cause plaintiff to need more hydrocodone for pain mitigation "which [will] make[] any kind of work hazardous" due to the lowered cognition levels from the additional drugs. AR 1415.

27. In an email dated November 12, 2015, plaintiff indicated that he wished to appeal LINA's decision to terminate his benefits. AR 687. Plaintiff indicated that Dr. Vandenburgh's August 3rd PAA was incorrect, and that the November 11th PAA was correct as it was completed by Dr. Vandenburgh when Plaintiff "helped clarify the real restrictions that [he] face[s] on a regular basis." AR 687. In a second email

Page 10 – OPINION AND ORDER

on the same day, Plaintiff supplied his daily "normal schedule of activities." AR 688.

The schedule included:

> **0800**- awaken, take Medication. Check on son to make sure he has bathed, taken meds, had breakfast, remind him to do chores.
> **0900-1030**- soak in bathtub to help alleviate pain in back
> **1100**- remind son to eat lunch, check on chores and teeth brushing
> **1130-1150**- take son to work and return home
> **1200-1630**- lay down and sleep frequently getting up around 1400 to take pain medication
> **1630-1715**- get son from work and return home
> **1730**- recheck to make sure chores have been done
> **1800-2000**- watch movies on laptop while laying in bed
> **2000**- Take pain meds then continue to watch movies, checking to make sure Jeremy has brushed his teeth and retainer before going to sleep
> **2030**- watch movies on laptop while laying in bed
> **2200**- Take sleeping medication and additional Norco
> **2230**- try to sleep
> **0200**- take additional pain meds

AR 688. This schedule did not include many of the activities which plaintiff's June 5, 2015 Disability Questionnaire and Activities of Daily Living form indicated that he could perform. *Compare* AR 688 *with* AR 140–41.

28.  As part of the appeal process, LINA requested that Dr. Joseph Rea, a board-certified specialist in occupational medicine, complete an independent review of Mulhern's records and provide his opinions. His report, dated December 22, 2015, indicated that Plaintiff would need medically necessary work activity restrictions. Dr. Rea recommended:

> Limit standing to 20 minutes at a time for up to a total of two hours over an eight-hour period of time; limit walking to up to 15 minutes at a time for up to two hours over an eight-hour span of time; avoid kneeling, crouching, crawling, or squatting; limit stooping, bending, or climbing stairs to a rare (less than occasional) basis. There is no indication of limitation with respect to sitting, reaching, or general hand use. There is no limitation predicated on any untoward medication side effects.

Page 11 – OPINION AND ORDER

AR 2035.  On January 8, 2016, Dr. Rea submitted an addendum to his independent review.  This addendum was requested by LINA and was meant to determine if the 2012 SSA notice of determination warranted additional limitations of work activities.  Dr Rea stated:

> Because of [the SSA determination], I would again modify some earlier limitations, specifically to sit for up to five hours over an eight-hour interval of time with positional changes, with intervals of sitting, standing, and walking to relieve constant sitting.
> Otherwise, it still appears, based on my impression of the overall clinical evidence, that the original suggested limitations on my part still would be basically appropriate in this case; other than, again, the sitting feature.

AR 1406.

29. On December 28, 2015, Dr. Vandenburgh recorded plaintiff as being "alert" and "comfortable" during an office visit to discuss his pain.  AR 1381 ("no new pains, just same old ones not getting better").

30. In January 2016, LINA had a physician complete a second TSA for plaintiff to determine if, based off Dr. Rea's findings and recommendations, plaintiff met the definition for disabled under the Policy.  AR 1388–90.  The TSA indicated that there were jobs, specifically Cardiac Monitor Technician and Telephonic Triage Nurse, which Plaintiff was able to perform, and which would pay the minimum of 60% of Plaintiff's pre-disability income required by the Policy.  AR 1389.  The TSA included a list of medically necessary work activity restrictions which were identical to the restrictions set by Dr. Rea's independent review.  AR 1388–89.

31. On August 24, 2016, Plaintiff had an office visit with Dr. Zirschky following a fall plaintiff experienced due to passing out.  AR 1371.  At the visit, Dr. Zirschky's

note states that plaintiff was able to sit comfortably in a chair and arise without issue but has a "waddling gait." AR 1375.

32. Notes by Dr. Zirschky after an office visit on September 12, 2016 described plaintiff as a "healthy-appearing gentleman who is significantly overweight, but is able to arise and walk across the room without any hesitation." AR 1357. Dr. Zirschky also noted that there was no irritability with upper extremity range of motion. AR 1357.

33. On March 3, 2017, Dr. Vandenburgh completed a health questionnaire based on Plaintiff's physical abilities which reported that plaintiff would need to miss "more than four days per month" of work due to "bad days;" he could sit for "about two hours" in an eight-hour day but for only for up to thirty minutes at a time; he could stand/walk for "less than two hours" in an eight-hour day and could not stand for more than fifteen minutes at a time; he would need to take breaks every thirty minutes to walk for ten minutes; he would need ten to fifteen unscheduled breaks during an eight-hour work day to lie down for ten minutes in order to alleviate pain; he could never reach, stoop, climb stairs, or crouch. AR 2175–2177.

34. On July 6, 2017, Dr. Greg Smith, a board-certified occupational medicine specialist, submitted an independent review of Plaintiff's medical records. AR 3488–510. Dr. Smith completed this review at the request of LINA and both plaintiff and LINA accept Dr. Smith's summary of Plaintiff's medical history as accurate. Doc. 29 at 8; Doc. 30 at 2. Dr. Smith listed "objective functional limitations" associated with Plaintiff's chronic conditions. These limitations included: no repetitive twisting of

the neck, no heavy work, no work where plaintiff's unsteady gait could create a hazard to plaintiff or others, no prolonged static positions, and no operating vehicles in or around a hazardous workplace within two hours of taking fast-acting opioids. AR 3509. Dr. Smith made a note that Plaintiff's "continued use of addictive fast acting opioids, in combination with addictive benzodiazepine" was "very questionable[.]" AR 3509. Other functional limitations included: *occasionally* standing for fifteen minutes, walking for up to fifteen minutes, lifting and carrying up to twenty pounds, pushing/pulling up to forty pounds, climbing one to two flights of stairs, reaching at desk level, below the waist, and above the shoulders, and using lower extremities for foot controls; *less than occasionally* stooping, kneeling, and crouching. AR 3509–10. Dr. Smith determined that Plaintiff could sit *constantly* for up to 120 minutes at a time with a five-minute stretch break. AR 3509.

35. Another TSA was completed by LINA on July 24, 2017. This TSA listed Cardiac Monitor Technician and Director, Nurses' Register as possible occupations available to Plaintiff given his functional restrictions. The TSA's findings were based off the functional restrictions from Dr. Smith's Peer Review. AR 3509–10.

36. Based off Dr. Smith's Peer Review and the July 24, 2017 TSA, LINA again concluded that Plaintiff did not meet the definition of "disabled" on November 23, 2015 and upheld its termination of Plaintiff's LTD benefits. AR 3954-57.

## STANDARD OF REVIEW

ERISA provides that a participant of an ERISA plan may bring a civil action in federal court "to recover benefits due to him under the terms of his plan, to enforce

his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan[.]" 29 U.S.C.S. § 1132(a)(1)(B). An ERISA plan that does not contain language conferring discretion on the plan administrator is subject to a *de novo* standard of review. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109, 115 (1989). "When applying the *de novo* standard in an ERISA benefits case, a trial on the administrative record, which permits the court to make factual findings, evaluate credibility, and weigh evidence, appears to be the appropriate proceeding to resolve the dispute." *Rabbat v. Standard Ins. Co.*, 894 F. Supp. 2d 1311, 1314 (D. Or. 2012).

Further, under a *de novo* review of the AR for ERISA cases, the claimant bears the burden of proof. *Muniz v. Amec Constr. Mgmt., Inc.*, 623 F.3d 1290, 1294 (9th Cir. 2010). To meet this burden of proof, the claimant "must establish by a preponderance of the evidence, that []he was disabled under the terms of the Plan during the claim period." *Delaney v. Prudential Insurance Co. of America*, 68 F. Supp. 3d 1214, 1221 (D. Or 2014) (citation and internal quotations marks omitted).

## DISCUSSION

The issue before this Court is whether plaintiff proved by a preponderance of the evidence that he was disabled under the terms of the Policy when LINA terminated his LTD benefit payments. LINA began paying disability payments to plaintiff on February 6, 2009, AR 4130, and later terminated hisLTD benefits on October 23, 2015 after a finding that plaintiff was no longer disabled under the Policy. AR 3993. The Policy provides that:

> After Disability Benefits have been payable for 24 months, the Employee is considered Disabled if, solely due to Injury or Sickness, he or she is:
> 1. unable to perform the material duties of any occupation for which he or she is, or may reasonably become, qualified based on education, training or experience; and
> 2. unable to earn 60% or more of his or her "Indexed Earnings."

AR 23. The plan defines sickness as "[a]ny physical or mental illness[.]" AR 23. Plan benefits "terminate the date the Insurance Company determines he or she is not Disabled." AR 16.

The Court finds that plaintiff was physically disabled on November 23, 2015 when LINA decided to terminate his benefits. The Court is not persuaded that plaintiff's conditions have improved to the point that he is employable for several reasons. First, the medical records and medical evaluations from treating physicians do not indicate that plaintiff was capable of employment, especially the kind of employment which LINA's TSA determined plaintiff was capable. Second, Plaintiff's 2015 Disability Questionnaire and Activities of Daily Living form show a decrease in the ability to perform activities and a decrease in the types of activities that Plaintiff performed when compared to his 2009 and 2010 Questionnaires.

Further, neither plaintiff's medical records nor the medical evaluations by treating physicians indicate that Plaintiff's physical health or mental capabilities have improved.

Plaintiff asserts that his condition has not improved since the 2012 RFC determination by the SSA ALJ. LINA contends that the SSA decision should not hold weight because it was a "determination [made] three years prior to the relevant date in this case." Dkt. 36 at 6. The Court is not convinced by LINA's argument that no

Page 16 – OPINION AND ORDER

weight should go to the 2012 SSA determination. S*ee Ayers v. Life Ins. Co. of North America*, 869 F. Supp. 2d 1248, 1265 (D. OR 2012) ("While SSA decisions are not binding on plan administrators, they are nonetheless persuasive evidence of disability."); *see also Rabbat v. Standard Ins. Co.*, 894 F. Supp. 2d 1311 (D. OR 2012) ("Social Security disability awards are evidence of disability.") (internal citational omitted). The Court does not find that plaintiff's ability to perform activities improved between 2012 and 2015 as determined by physician evaluations and as supported by his medical record.

The physical limitations expressed in the SSA ALJ's 2012 benefits determination decision appear to come from Dr. Zirchky's 2011 Physical Capacities Evaluation. *Compare* AR 1830–31 *with* AR 1865. In Dr. Zirchky's 2011 evaluation, he opined that plaintiff could only sit for four hours in an eight-hour day, stand/walk for less than one hour in an eight-hour day, and must alternate between sitting and standing at will throughout the day. AR 1830. Further, plaintiff suffered from fatigue to an extent that it, when combined with his other limitations, prevented Plaintiff from "working full time, even in a sedentary position." AR 1831.

LINA contends that this is no longer an accurate evaluation of Plaintiff's physical abilities. Instead, LINA presents Dr. Vandenburgh's 2015 PAA as proof of improvement. LINA's 2015 termination decision is based in-part on the PAA form completed by Dr. Vandenburgh on August 3, 2015. In this PAA, Dr. Vandenburgh indicated that Plaintiff can sit *frequently*, between 1/3 and 2/3 of the day (i.e. between 2.5 and 5.5 hours per day) and he can sit and stand *occasionally*, up to 1/3 of the day

(i.e. 0 to 2.5 hours per day). AR 1416. LINA asserts that the physical abilities opined in that 2015 report indicate that plaintiff is capable of performing the jobs that the 2015 TSA indicated are available to him. When determining whether there is fulltime employment that Plaintiff was capable of holding in 2015, LINA used the higher end of the ranges of time that plaintiff could sit, stand, or walk. LINA offers the conclusions in a 2016 Peer Evaluation by Dr. Rea and conclusions in a 2017 Peer Evaluation by Dr. Smith to prove it was justified in doing so. AR 1403, 2035.

Despite these Peer Reviews, the Court is unconvinced that, at the time the 2015 termination decision was made, plaintiff's medical record indicated that he could perform the jobs specified in the TSA. Not only were the Peer Reviews conducted after the original termination decision occurred—thereby including medical records that were created after the decision date—the Court does not find them more accurate or more persuasive than the opinions rendered in the medical records by physicians who treated plaintiff. *See Oldoerp v. Wells Fargo & CompanyLong Term Disability Plan*, 12 F. Supp.3d 1237, 1255 (N.D. Cal. 2014) ("When an in-person medical examination credibly contradicts a paper-only review conducted by a professional who has never examined the claimant, the in-person review may render more credible conclusions.").

The Court may "evaluate and give appropriate weight to a treating physician's conclusions, if it finds these opinions reliable and probative." *Rabbat v. Standard Ins. Co.*, 894 F. Supp. 2d at 1322 (D. Or. 2012) (quoting *Paese v. Hartford Life & Acc. Ins. Co.*, 449 F.3d 435, 442 (2d Cir. 2006)). The Court finds that both Dr. Zirschky and

Page 18 – OPINION AND ORDER

Dr. Vandenburgh, who had been long-time physicians for Plaintiff, gave accurate evaluations of his physical abilities in 2011 and 2015 respectively. Further, the maximum limitations set forth in the 2011 evaluation are still within the ranges of abilities set forth in the 2015 evaluation. *Compare* AR 1830 (plaintiff could sit for four hours in an eight-hour workday and stand/walk for two hours in an eight-hour work day) *with* AR 1416 (plaintiff could sit for between two and one-half and five and one-half hours and he sit and stand for up to two and one-half hours). At no point before the termination decision does the record indicate that plaintiff's mental capacities or physical capabilities have increased since the SSA ALJ made her 2012 RFC findings. Thus, the Court finds that the discrepancies between Dr. Zirschky's 2011 evaluation and Dr. Vandenburgh's 2015 evaluation come down to the use of different forms. This conclusion is supported by plaintiff's medical records which indicate that in 2015 he had ongoing use of high levels of narcotics and that he continued to see several doctors for his chronic pain. *See* AR 3502–06.

As such, Plaintiff has proved by a preponderance of the evidence that the evaluations by his treating physicians shows that Plaintiff was still disabled on November 23, 2015 when LINA decided to terminate his LTD benefits.

The Court is also not persuaded that plaintiff's capacities statement from June 5, 2015 prohibits a finding of disability. It is true that plaintiff did engage in some ADLs such as driving or exercising. However, these were not performed for recreation, and plaintiff reported that pain caused by his underlying conditions always resulted. However, the record does reveal that plaintiff's prescribed opioids

Page 19 – OPINION AND ORDER

negatively impact his cognition for two hours after each dose. Moreover, plaintiff takes these prescriptions at regular intervals throughout the day and night to control his pain. These medications would certainly hamper plaintiff's ability to safely travel to work or perform work well.

For reasons set forth above, the Court finds that plaintiff has met his burden by a preponderance of the evidence that he was disabled under the Policy at the time of the termination of his LTD benefits. In making this finding, the Court relies on the RFC formulated by the SSA ALJ in her disability determination as it is consistent with medical record as whole. The Court agrees with plaintiff's arguments that none of the jobs relied on by defendant in the record would satisfy his RFC.

## CONCLUSION

Plaintiff's Motion for Judgment on the Administrative Record (Doc. 29) is GRANTED and defendants' Cross Motion for Judgment on the Administrative Record is DENIED. Doc. 30. The Court declares that Mr. Mulhern is entitled to long-term disability benefits under the terms of the Policy. The parties shall meet and confer to address the specific amount of back benefits. The parties shall submit a stipulated proposed form of judgment.

IT IS SO ORDERED.

DATED this 31st  of March, 2021.

                                  /s/Ann Aiken
                                    Ann Aiken
                                 U.S. District Judge